RUBBER TRADING COMPANY, Respondent, *v.* MANHATTAN RUBBER MANUFACTURING COMPANY, Appellant.

Sale — delivery of goods — refusal of purchaser to accept goods until delivered at factory of purchaser and inspection thereat — vendor cannot maintain action for purchaser's breach of contract of sale when tender is accompanied by a condition.

Defendant having agreed to buy from plaintiff, an importer, a quantity of rubber, was notified of the arrival of shipments and asked to inspect the rubber at the warehouse or on the dock, which defendant refused to do and stated that there would be no accept-

ance until the rubber reached its factory. Plaintiff insisted on its inspection at the storehouse and that the rubber leaving the storehouse would be an acknowledgment of its acceptance. Defendant insisted that withdrawal of the goods from the warehouse must be without prejudice to their rejection afterwards. Neither side would yield. The plaintiff sold part of the rubber at a reduced price; the rest it retained and brought this action to recover the profit which was lost. Plaintiff's complaint, as amended on the trial, alleges that the defendant "wrongfully repudiated the said contract, and definitely notified the plaintiff that it would not thereafter perform the same." *Held,* that a tender, burdened with the condition, as this tender was, that inspection must first be made, and satisfaction stated, was not a tender which answered the requirements of the contract; that the plaintiff failed to establish that it rescinded the contract on the ground of defendant's anticipatory breach; that plaintiff having failed to give notice of an election to treat it as abandoned, the contract survived (Personal Property Law, § 146; L. 1911, ch. 571; Cons. Laws, ch. 41), and the award of damages in its favor cannot be sustained.

*Rubber Trading Co.* v. *Manhattan Rubber Mfg. Co.,* 164 App. Div. 477, reversed.

(Argued May 25, 1917; decided June 5, 1917.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 8, 1914, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Louis W. Stotesbury* and *Justin L. Miner* for appellant. There was no repudiation of the contract by the defendant. (*Nat. Cont. Co.* v. *H. R. W. P. Co.,* 192 N. Y. 209; *Graves* v. *White,* 87 N. Y. 463; *Dingley* v. *Oler,* 170 U. S. 490.) The alleged repudiation was never adopted by the plaintiff, was never acted upon, and affords no excuse for plaintiff's failure of performance. In order to recover in an action plaintiff was bound to establish its readiness to perform and a valid tender of performance on its part. (*Ga Nun* v. *Palmer,* 202 N. Y. 483; *Hochster* v. *De La Tour,* 2 El. & Bl. 678; *Frost* v.

*Knight,* [L. R.] 7 Exch. 111; *Foss-Schneider Brewing Co.* v. *Bullock,* 59 Fed. Rep. 83; *Bernstein* v. *Meech,* 130 N. Y. 354; *Becker* v. *Seggie,* 139 App. Div. 463; *Marks* v. *Van Eeghen,* 85 Fed. Rep. 853; *Dingley* v. *Oler,* 117 U. S. 490; *Roehn* v. *Horst,* 178 U. S. 1.)

*Harry D. Nims* and *Clinton De R. Combes* for respondent. A change in terms is equivalent to a refusal to perform. (*Ackerman* v. *A. V. Mills,* 11 N. Y. Supp. 528; *N. Y. & P. Co.* v. *Busch,* 148 Fed. Rep. 929.) An offer by a vendor, after an anticipatory breach by the vendee, to perform under the original terms or under new terms, does not, unless accepted by the vendee, constitute a waiver of the breach. (*Canda* v. *Wick,* 100 N. Y. 127; *Poel* v. *B. B. C. Co.,* 159 App. Div. 365; *Nichols* v. *S. S. Co.,* 137 N. Y. 471; *Reindeau* v. *Bullock,* 147 N. Y. 269; *Alpena Co.* v. *Backus,* 156 Fed. Rep. 944; *United Press Assn.* v. *National Assn.,* 237 Fed. Rep. 547.)

CARDOZO, J. The defendant, a manufacturer of rubber, agreed to buy from the plaintiff, an importer, fifteen tons of prime thin disc Manicoba rubber at $1 per pound; delivery was to be made at the rate of about five tons a month in September, October and November, 1912, and delivery orders were to be sent to the buyer when the rubber was ready. Goods were to be billed on a credit of ten days. The first delivery under this contract was made in August, and was paid for in September. At the time of payment inspection had not yet been made. Defects were later discovered, and 7,900 pounds were returned with the plaintiff's consent. The incident seems to have warned the defendant of the need of caution. A second shipment arrived from abroad in October. The defendant's president was notified of the arrival of the vessel, and was asked to inspect the rubber while it lay in the warehouse or on the dock. He refused to do so. There would be no acceptance, he said, till the rubber reached the

defendant's factory, where it could be carefully examined,
and subjected to laboratory tests.  "We won't accept
any more rubber at the storehouse.  You have got to
ship it to our factory, and we will put it through a
chemical test and won't pay you unless it is satisfactory."
He also told the broker who signed the contract for the
buyer that he would accept only round discs, but a few
days later he said that the shape did not matter if the
rubber in other respects was right.  The plaintiff was
not satisfied that acceptance should be postponed until
delivery had been made.  It wrote the defendant on
October 16, 1912: "Referring to our contract with you
of July 19, 1912, for fifteen tons of Prime Thin Disc
Manicoba Rubber; you have stated to us that you intend
to make a very careful inspection of the rubber delivered
under this contract, in addition to the usual inspection.
We have placed with the West Side Warehouse, No. 79
to No. 101 Laight Street, about 11,200 pounds of rubber,
which we hereby tender you as the October delivery
under this contract.  Please make such further inspec-
tion of this rubber as you wish as soon as possible, noti-
fying us when it will be convenient for you to make such
inspection, in order that we may place enough of our
men at your disposal to enable you to make the examina-
tion quickly and easily."  The letter closes with the state-
ment:  "Delivery orders are ready to be handed to you
as soon as you notify us that this rubber is satisfactory."
The defendant sent back word to forward the delivery
orders, and that the rubber would then be taken, but
that its quality must be right or payment would not be
made.  The plaintiff retorted "that the rubber must be
approved in New York, and its leaving the storehouse
would be an acknowledgment of its acceptance."  Other
shipments arrived from abroad in November.  Again the
plaintiff gave warning that delivery orders would not be
furnished till notice was received that the rubber was
satisfactory.  Its president admits that it never receded

from that position. Neither side would yield. Each notified the other that the contract had been broken. The plaintiff sold part of the rubber at a reduced price; the rest it retained. The action is brought to recover the profit which has been lost.

The complaint, as it first stood, alleged a tender of the October and November shipments, and the defendant's refusal to receive them. Shortly before the trial, it became manifest that this theory would not hold. The tender had been coupled with a condition that approval must precede delivery. This condition was a departure from the contract. The plaintiff makes no claim to the contrary. The trial judge charged without objection: "The plaintiff had no right to demand a stipulation that the goods were satisfactory before making delivery. The insistence upon such demand invalidated the tender. There has been no tender of performance by the plaintiff in this case, nor is there one claimed." To escape this difficulty, the plaintiff amended its complaint, and changed the theory of its action. It alleged that on October 9, 1912, "the defendant wrongfully repudiated the said contract, and definitely notified the plaintiff that it would not thereafter perform the same." This anticipatory breach, it is said, made tender of the rubber needless. Two acts are relied upon as evidence of repudiation. One is the defendant's announcement that withdrawal of the goods from the warehouse must be without prejudice to their rejection afterwards. The other is the notice that the discs delivered must be round. The demand for round discs was withdrawn a few days later. It was not referred to again by either of the parties. Of the two acts assigned as evidence of repudiation, the first only deserves discussion.

We may assume without deciding that the warehouse, which was the place of delivery, was also the place where inspection should have been made (*Bliss Co.* v. *U. S. Incandescent Gas Light Co.*, 149 N. Y. 300, 306;

Williston on Sales, § 480). We may also assume, again without deciding, that the defendant was at fault and in effect renounced performance when it insisted upon the right to withhold payment if defects which could have been discovered at the warehouse, were discovered later at the factory. Whether adequate and customary inspection was possible at the warehouse, was a question for the jury. But even though the defendant was at fault, the contract, none the less, survived unless the plaintiff gave notice of an election to treat it as abandoned (Sales of Goods Act, § 146, L. 1911, ch. 571; Consol. Laws, ch. 41). The plaintiff learned on October 9 that the defendant insisted upon the right of inspection at the factory. With that knowledge, it asserted the continued existence of the contract, made tender of performance, coupled its tender with an untenable condition, and counted on the rejection of that tender as the sole evidence of the breach. The right to delivery was not dependent upon previous inspection. The buyer was free to omit inspection altogether. It may thereby have taken the risk of defects which inspection would have revealed, but that is another question. It certainly did not take the risk of latent defects. A tender, burdened with the condition that inspection must first be made, and satisfaction stated, was not a tender which answered the requirements of the contract. The point is made that this was not its purpose. The contract, we are told, had been already broken by the buyer; and the seller, treating it as abandoned, proposed a new contract, subject to a new condition. But that is not what happened. The seller did not profess to be submitting an offer for a new contract. It professed to be asserting its rights under the old one. From the beginning to the end of its letter of October 16, there is no hint that the buyer has done anything wrong. Still less is there any hint that because of the buyer's wrong, the seller has chosen to treat the contract as abandoned. The statute says that the seller

must give notice of his election (Sales of Goods Act, § 146). One cannot read that notice in the terms of the plaintiff's tender.

In this situation, the rights of the parties are not doubtful. The plaintiff did not rescind for the defendant's anticipatory breach. It rescinded for the defendant's rejection of a tender which imposed an unauthorized condition. It attempted at the trial to revert to the earlier breach, which antedated its own misconduct. It could not purge itself of wrong so easily. On October 16, 1912, and again on November 4 and 15, the dates of the successive tenders, it made its choice. It chose to keep the contract alive in spite of anything that had gone before. But a contract, thus preserved, remains alive as much for the benefit of the buyer as for the benefit of the seller (*Ga Nun* v. *Palmer*, 202 N. Y. 483, 490; *Becker* v. *Seggie*, 139 App. Div. 463; *Frost* v. *Knight*, [L. R.] 7 Ex. 111; *Dingley* v. *Oler*, 117 U. S. 490, 503; *Lehmaier* v. *Standard S. & T. Co.*, 123 App. Div. 431, 436; *Avery* v. *Bowden*, 5 E. & B. 714.) Each may take advantage of events which supervene. The buyer may now insist that the seller's misconduct shall be cast in the balance with its own. It may say that at the moment of the tender, while the contract was still alive, seller and buyer were at least equally at fault (*Avery* v. *Bowden*, *supra*). If the defendant never retracted its unlawful claim of right, the like is true of the plaintiff. The one as much as the other is chargeable with wrong. In saying this, we assume that at the outset the wrong was chargeable to the defendant. The plaintiff should have kept its own conduct free from blame. The award of damages in its favor is not to be sustained.

The judgment should be reversed and a new trial granted with costs to abide the event.

CHASE, COLLIN, CUDDEBACK, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment reversed, etc.